UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DEIRDRE HAMMOND,                        )
                                       )
        Plaintiff,                     )
                                       )   CIVIL ACTION NO.
v.                                     )   10-11121-DPW
                                       )
JPMC SPECIALTY MORTGAGE LLC,           )
f/k/a WM SPECIALTY MORTGAGE LLC,       )
                                       )
        Defendant.                     )

MEMORANDUM AND ORDER
April 15, 2011

Plaintiff Deirdre Hammonds[1] defaulted on a mortgage secured by her residential property, and the creditor-defendant JPMC Specialty Mortgage LLC ("JPMC"), formerly known as WM Specialty Mortgage LLC ("WM"),[2] initiated foreclosure proceedings in November 2006. An auction to sell the property under the terms of the mortgage's power of sale took place on November 20, 2008. Hammonds then filed this action over a year later challenging the validity of that sale and seeking relief from the state court

_____

[1]Deirdre Hammonds's name appears as "Deirdre Hammond" on the docket and captions of a number of the parties' submissions to this court. However, her name appears to be Hammond<u>s</u>, which is how she signed the mortgage documents, her affidavit, and her verified complaint in state court. Consequently, I will refer to her as Hammonds throughout this Memorandum and Order.

[2]WM Specialty Mortgage LLC, the entity which originally assigned Hammonds's mortgage, changed its name to JPMC Specialty Mortgage LLC on December 29, 2008. In order to avoid confusion, for purposes of this Memorandum and Order, I will refer to both entities as JPMC.

1

judgment of foreclosure and damages in the amount outstanding on her mortgage at the time of sale. JPMC has moved for summary judgment, and, after considering the record carefully, I will grant the motion.

## I. BACKGROUND

In 1999, Hammonds purchased her home, 24 Pennacook Avenue, Oak Bluffs, Massachusetts, (the "property") for $300,000. In 2006, Hammonds sought to refinance her outstanding mortgage on the home in order to meet family expenses. Hammonds applied for and was granted a refinanced mortgage from Ameriquest Mortgage Company ("Ameriquest") in the amount of $575,000. During the application process, Hammonds falsely represented her income, although she claims that Ameriquest was aware of the falsity and encouraged her to inflate her income on the application. Prior to closing on the refinanced mortgage, Hammonds faxed Ameriquest a statement listing her monthly income as $12,000 and, at closing, signed a document entitled "Borrower's Certification of Income" confirming that she earned $12,000 per month.[3] The mortgage documents were executed and the mortgage duly recorded on February 25, 2006. After the prior mortgage and more than

---

[3] Hammonds denies knowledge or recollection of the fax, but does not dispute that it is in her handwriting. Similarly, she "has no knowledge of signing [the 'Borrower's Certification of Income,'] as she was presented with countless forms by the notary . . .", but does not allege that the signature is not hers.

$40,000 in outstanding tax liens had been satisfied, Hammonds received $41,370.67 as a cash payout.

Hammonds ceased payments on the mortgage after June 2006. Failure to make payments constituted default under the terms of the mortgage. Consequently, JPMC, as holder of the mortgage, initiated foreclosure proceedings on November 1, 2006. Ameriquest subsequently assigned the mortgage to JPMC on December 14, 2006, and the assignment was properly recorded on December 27, 2006.

On January 24, 2007, the Massachusetts Land Court issued a judgment authorizing JPMC to foreclose on the property by power of sale and by entry. A foreclosure sale was scheduled for 12:00 p.m. on November 20, 2008, and the parties agree that this sale was properly noticed.[4] JPMC had contracted with Bay State Auction Company ("Bay State") to conduct the auction sale, and Bay State, in turn, hired Stewart Kusinitz, a licensed auctioneer, to run the auction on November 20, 2008. In paperwork provided to Kusinitz by Bay State, JPMC's counsel indicated that Corinne DeLangavant would be acting as the bank representative contact, listed $22,886.47 in federal tax liens, and included the foreclosure notice, a blank memorandum of sale,

---

[4]The sale had been scheduled for November 6, 2008, but was postponed by public proclamation, and Hammonds and other interested parties received proper notice of the postponement. JPMC had previously scheduled and rescheduled several other auctions.

3

and a blank certificate of entry. On the morning of November 20, 2008, JPMC faxed Kusinitz bid instructions permitting Kusinitz to bid on JPMC's behalf in an amount up to $730,911.13 if a third party bid on the property or in the amount of $734,672.73 as the bank buyback if no other bids were forthcoming.

Hammonds was present at the property at 12:00 p.m. on November 20, 2008, when the foreclosure sale was scheduled to begin. In deposition testimony, she notes that also present at that time were Kusinitz, DeLangavant, an unidentified male, and an unidentified female. Kusinitz recalls that DeLangavant and an acquaintance-witness, Andrew Cohen, were present at 12:00 p.m. Cohen, the unidentified male, had accompanied Kusinitz to act as witness to the sale and entry. The unknown woman had driven up to the property around noon, and, according to Hammonds, "[s]he asked if [the auction] had already happened. Mr. Kusinitz said no and handed her some information, and he told her to come back at 2:30."[5] Although Hammonds states in her affidavit and Opposition Memorandum that she saw other individuals present at the property at 12:00 p.m., she concedes, in her deposition that she was referring in that statement only to the woman in the car and Cohen.

---

[5]By contrast, Hammonds alleges in an affidavit that Kusinitz told potential bidders that the auction was closed. However, in her deposition, she admits that, by "closed," "[she] meant that it was not opened yet. It hadn't started and to come back at 2:30."

4

Kusinitz did not open auction at 12:00 p.m., but instead continued it to 2:30 p.m. that same day. JPMC maintains that Kusinitz continued the sale at the request of Hammonds, who had asked for time to confer with her attorney. Hammonds denies that she asked Kusinitz to postpone the sale.[6] She also maintains that DeLangavant left the property before the 2:30 p.m. sale, although Kusinitz maintains that she was present. Via its faxed bid, JPMC was the only bidder at the auction and, consequently, Kusinitz contends that he accepted JPMC's previously made bid. Kusinitz then signed the memorandum of sale, recording the full buyback bid as the purchase price. DeLangavant did not sign the memorandum of sale as purchaser or as seller, and no amount of deposit was listed in the memorandum of sale. The terms listed in the public notice waived the deposit requirement for the mortgagee.

JPMC also performed a foreclosure by entry on November 20, 2008. Kusinitz and Cohen witnessed the peaceable entry by DeLangavant and signed a Certificate of Entry attesting to it. The Certificate of Entry was recorded with the foreclosure deed.

---

[6]Later in her deposition testimony, Hammonds admits that she had asked JPMC to delay the sale at some point and stated that "I tried to talk with him about it. I don't know specifics or dates or times, but I did ask if we could work something out given the circumstances." I will for purposes of this motion assume in Hammonds's favor that she did not request a postponement on November 20, 2008. *See Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010).

Although the sale took place on November 20, 2008, the foreclosure deed was not recorded until March 12, 2009, when JPMC filed a notice of foreclosure, foreclosure deed, and affidavit of sale, all dated March 9, 2009.  The affidavit of sale, signed by Cathleen Cooley of JPMC, states that the property was sold by and to JPMC at a foreclosure auction conducted at 12:00 p.m. on November 20, 2008.

On February 4, 2010, Hammonds filed a lawsuit in Massachusetts Superior Court against Ameriquest, JPMC, and Kusinitz.  In a seven-count amended verified complaint, Hammonds alleges violations of 209 C.M.R. § 18.16(2), Mass. Gen. Laws ch. 93A, and Mass. Gen. Laws ch. 183C, § 4, by Ameriquest and JPMC; violations of Mass. Gen. Laws ch. 244, §§ 12 and 15, by JPMC; and intentional and negligent misrepresentation by all defendants. She also seeks damages equal to $734,672.73 (the amount owed on her mortgage at the time of sale and the purchase price listed on the Memorandum of Sale) from all three defendants and relief from the final judgment of foreclosure due to fraud, misrepresentation, or other misconduct.

The case was removed to this court on July 1, 2010, and Ameriquest and Kusinitz were subsequently dismissed from the suit, as were the counts alleging violations of 209 C.M.R. § 18.16(2), Mass. Gen. Laws ch. 93A, and Mass. Gen. Laws ch.

183C, § 4.  JPMC filed a motion for summary judgment as to the four remaining counts against it.

## II. STANDARD OF REVIEW

A movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] Fed. Rule Civ. P. 56(a).  If the moving party meets this burden, "the opposing party can then defeat the motion by showing that there is a genuine issue of material fact." *Rivera-Colon v. Mills*, — F.3d —, 2011 WL 504049, at *2 (1st Cir. Feb. 15, 2011). An issue is genuine "if 'a reasonable jury could resolve the point in favor of the nonmoving party.'" *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, — F.3d —, 2011 WL 834072, at *2 (1st Cir. Mar. 11, 2011) (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).  A fact is material if "its existence or nonexistence has the potential to change the outcome of the suit." *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010).

"In evaluating whether there is a genuine issue of material fact, the court examines the record — pleadings, affidavits, depositions, admissions, and answers to interrogatories — viewing

_____

[7]Although Rule 56 was amended effective December 1, 2010, "[t]he substantive standard for summary judgment remains unchanged." *Tropigas de P.R. v. Certain Underwriters at Lloyd's of London*, — F.3d —, 2011 WL 834072, at *2 n.5 (1st Cir. Mar. 11, 2011).

the evidence in the light most favorable to the party opposing summary judgment." *Id.* (citations omitted). However, I may "afford no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'" *Tropigas de P.R., Inc.*, 2011 WL 834072, at *2 (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)). Thus, in order to meet its burden, the nonmoving party "must point to competent evidence and specific facts." *Tropigas de P.R., Inc.*, 2011 WL 834072, at *3 (citation omitted). Such a "burden cannot be satisfied with a declaration that 'without proper explanation' contradicts his/her prior deposition testimony." *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 515 (1st Cir. 2009) (citation omitted).

### III. ANALYSIS

The four surviving counts essentially attack the validity of the foreclosure sale. Hammonds contends that the sale did not take place, and, therefore, JPMC did not purchase the property and could not transfer title. She further argues that JPMC misrepresented itself as the valid purchaser and that she was damaged by that misrepresentation because she lost her home. It bears emphasizing at the outset, however, that strictly speaking any sale would not result in the loss of her home, but rather the loss of her right to redeem her mortgage. *Williams v. Resolution GGF OY*, 630 N.E.2d 581, 585 (Mass. 1994) (citation omitted) ("The

execution of the memorandum of sale terminate[s] the plaintiff's equity of redemption."). Consequently, *invalidation* of the sale — which is what Hammonds's suit ultimately seeks — would result in the reinstatement of that right, not in any money damages or satisfaction of her defaulted mortgage.[8] JPMC would retain the right to foreclose by another sale pursuant to the Land Court judgment of January 24, 2007.

JPMC maintains that the foreclosure sale was properly conducted and valid and, in any event, JPMC also conducted a valid foreclosure by entry. Indeed, there is no dispute that Hammonds ceased payments on her mortgage after June 2006, that JPMC had a right to initiate foreclosure proceedings and exercise its power of sale, or that JPMC gave proper statutory notice of

---

[8]Even if the sale were to be invalidated, JPMC performed a peaceable and valid foreclosure by entry pursuant to the Land Court's judgment of January 24, 2007. DeLangavant was present on the property at 12:00 p.m. on November 20, 2008, and Kusinitz and Cohen witnessed the entry. A Certificate of Entry, signed by Cohen and Kusinitz, was executed on November 20, 2008, and recorded on March 12, 2009, in accordance with Mass. Gen. Laws ch. 244, § 1. *See Singh v. 207–211 Main St., LLC*, 937 N.E.2d 977, 979-80 (Mass. App. Ct. 2010) (rescript). According to § 1, "possession so obtained, if continued peaceably for three years from the date of recording of the memorandum or certificate . . . shall forever foreclose the right of redemption." *See also Santiago ex rel. Santiago v. Alba Mgmt., Inc.*, 928 N.E.2d 359, 363 (Mass. App. Ct. 2010). Consequently, if the sale were invalidated, the possession by entry would continue to run until March 12, 2012, leaving Hammonds less than one year to redeem the mortgage. *See Harlow Realty Co. v. Cotter*, 187 N.E. 118, 119 (Mass. 1933) (Rugg, C.J.) (acknowledging that it is common practice for a mortgagee to foreclose by entry when foreclosing by power of sale in case the foreclosure sale is found deficient in some way).

the foreclosure auction scheduled for 12:00 p.m. on November 20, 2008. Hammonds's action only challenges the validity of the sale that purportedly took place at 2:30 p.m. on that same day. She points to four deficiencies, each of which, she contends, invalidates the sale: (1) JPMC violated two post-sale, statutory recording requirements under Mass. Gen. Laws ch. 244, §§ 12 and 15; (2) Kusinitz and JPMC had no authority to postpone the sale from 12:00 p.m. to 2:30 p.m., rendering the later sale improperly noticed and invalid; (3) no sale took place because the memorandum of sale was not signed by JPMC either as purchaser or as creditor; and (4) the affidavit of sale recorded with the foreclosure deed contained material misrepresentations that prevented a transfer of the deed. After first addressing Hammonds's burden in opposing summary judgment, I will address each of her claims in turn.

A. Hammonds's Summary Judgment Burden

JPMC argues that Hammonds failed to meet her burden under Fed. R. Civ. P. 56. In opposing a motion for summary judgment, the nonmoving party "may not rest upon her laurels (or her pleadings)." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990) (quoting *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989)). Instead, she "must produce hard evidence of a material factual dispute to survive a summary judgment

motion." *United States v. 6 Fox St.*, 480 F.3d 38, 42 (1st Cir. 2007) (citation and quotation marks omitted).

Hammonds's memorandum opposing JPMC's motion contains no legal argument and provides only two case citations, both of which appear in a brief paragraph outlining the summary judgment standard. The memorandum consists of a list of "issues of fact" and "rationales" explaining why those facts are material and at issue. As the only additional evidence submitted to support her list of facts, Hammonds attaches two affidavits: an affidavit signed by her attorney that lists — but does not attach — five exhibits, four of which had previously been submitted by JPMC; and an unsigned affidavit by Hammonds. Hammonds's nine-paragraph affidavit includes factual assertions contradicted by her own deposition testimony[9] and the record and a paragraph initially stating, "This space left blank."[10] A copy of Hammonds's signed

---

[9]For example, Hammonds states in her affidavit that she heard Kusinitz tell others present at the property at 12:00 p.m. that the auction was "closed." However, in her deposition, she concedes that Kusinitz had not told others that the auction was "closed" but rather had informed the only person who showed interest in the auction, around 12:00 p.m., that the auction had not yet opened but would at 2:30 p.m. She also stated that she had "no recollection" of faxing a false income statement to Ameriquest in February 2006. However, Hammonds cannot eliminate the existence of the fax simply by stating that she does not remember it. She provides no evidence that it is not authentic and, indeed, the handwriting in the fax is consistent with Hammonds's signature on documents submitted to this court.

[10]*See* Hammonds Aff. ¶ 4.

affidavit and the missing exhibits were belatedly submitted to the court after briefing on this motion had concluded.

Despite the anemic nature of Hammonds's briefing, I will address her claims on the merits. The outstanding "issues of fact" offered by Hammonds are essentially legal in nature. However, it bears repeating that while I must view the evidence in the light most favorable to Hammonds, *Borges*, 605 F.3d at 5, I need not give any weight to "conclusory allegations, empty rhetoric, unsupported speculation," or factual assertions that contradict Hammonds's own deposition testimony. *Tropigas de P.R., Inc.*, 2011 WL 834072, at *2; *Meuser*, 564 F.3d at 515. As the First Circuit has recognized, "[a] genuine issue of material fact does not spring into being simply because a litigant claims that one exists. Neither wishful thinking nor 'mere promise[s] to produce admissible evidence at trial,' nor conclusory responses unsupported by evidence, will serve to defeat a properly focused Rule 56 motion." *Griggs-Ryan*, 904 F.2d at 115 (internal citations omitted).

B. Massachusetts General Laws ch. 244, § 12 (Count III)

In Count III, Hammonds alleges that JPMC did not purchase the property at auction and so could not comply with Mass. Gen. Laws ch. 244, § 12. That provision requires the seller at a foreclosure sale to "within ten days after the sale, file in the [Land Court] clerk's office a report on oath of the sale and of

his doings, and the court may confirm the sale or set it aside and order a re-sale."  Mass. Gen. Laws ch. 244, § 12.  JPMC does not dispute that no such report was filed within ten days,[11] but argues that a violation of this provision is not fatal to a foreclosure sale and, in any case, the statute does not provide the plaintiff with a remedy for any such violation.

By its very language, § 12 functions as a means of preserving evidence of the foreclosure sale and of protecting the purchaser at the sale from subsequent claims on the property. *See* Mass. Gen. Laws ch. 244, § 12 ("[T]he order of the court confirming the sale shall be conclusive evidence against all persons that the power of sale was duly executed.").  Hammonds, as mortgagor, is not an intended beneficiary of § 12 and suffers no harm by the mortgagee's failure to comply with it. Consequently, Hammonds has no right of relief under the statute. *See City of Boston v. Barry*, 53 N.E.2d 686, 689 (Mass. 1944) ("A statute 'imperative in phrase,' prescribing the time or manner of performance by a public or corporate officer of an act not intended for the benefit of a person in the position of the party attacking its validity, is ordinarily construed as a merely directory provision for the orderly and convenient conduct of

---

[11]There is no evidence or assertion in the record that any notice of sale has been filed with the clerk of the Land Court.

business, and compliance with it is not a condition of the validity of the act.").

Moreover, a mortgagor's interest in the property ceases upon execution of the memorandum of sale. *See Williams*, 630 N.E.2d at 585; *Outpost Café, Inc. v. Fairhaven Sav. Bank*, 322 N.E. 183, 185, 187 (Mass. App. Ct. 1975) (holding that the power of sale is complete when the memorandum of sale is executed and the mortgagor's right to redeem is terminated). Hammonds, therefore, had no interest in the property "within ten days after the sale," when JPMC should have filed notice under § 12.

Even if Hammonds were to have a right of relief, Massachusetts case law suggests that failure to comply with § 12 does not invalidate the sale. JPMC submits that *Field v. Gooding*, 106 Mass. 310 (1871), is controlling here. *Field*, however, specifically held only that the requirement of filing a notice of sale and affidavit in the *registry of deeds* — a predecessor statute to the current Mass. Gen. Laws ch. 244, § 15 — did not invalidate the foreclosure sale or prevent vesting of title. *See id.* at 312; *see also O'Meara v. Gleason*, 140 N.E. 426, 427 (Mass. 1923) (recognizing that "the failure to record a copy of the notice of sale and the affidavit would not defeat" the vesting of the deed and title following a foreclosure sale); *Reade v. Woburn Nat'l Bank*, 97 N.E. 773, 774 (Mass. 1912) ("When the title of mortgaged property becomes vested in the mortgagee

14

by a sale under the power in a mortgage, the failure to record a copy of the statutory notice of sale and affidavit will not defeat the title already vested by the sale.").

Nevertheless, while not directly controlling here, the *Field* court's reasoning suggests that failure to comply with § 12 is likewise benign. In *Field*, the Supreme Judicial Court first found that "the provision is intended to secure the preservation of evidence that the conditions of the power of sale named in the deed have been complied with. It is for the protection of those claiming under the sale, and to prevent litigation." *Id.* Section 12 shares this purpose. The *Field* court went on to find that the title vests with the purchaser "by the sale and the deed," not the recording of notice, and "[i]t was not the intention to make it subject to a condition subsequent, and liable to be defeated by a failure of the mortgagee to perform an act which must follow the conveyance in point of time; and thus add to the conditions prescribed by the mortgagor in the deed." *Id.* at 312–13.

Hammonds offers no legal authority — or argument — that *Field* would be inapplicable to § 12, and, consequently, I am satisfied that JPMC's failure to comply with the requirements of § 12 did not invalidate the sale. Hammonds's claim for relief under that provision is without merit.

Similar to Count III, Count IV alleges JPMC could not file a notice of the sale or a sale affidavit as required by Mass. Gen. Laws ch. 244, § 15, because JPMC did not purchase the property at the foreclosure sale. (Am. Compl. ¶¶ 64-66.) JPMC counters that it complied with § 15 in all respects.

Section 15 states that "[t]he person selling . . . shall, after the sale, cause a copy of the notice and his affidavit, fully and particularly stating his acts, or the acts of his principal or ward, to be recorded in the registry of deeds for the county or district where the land lies . . . ." Mass. Gen. Laws ch. 244, § 15 (emphasis added). "If the affidavit shows that the requirements of the power of sale and of the statute have in all respects been complied with, the affidavit or a certified copy of the record thereof, shall be admitted as evidence that the power of sale was duly executed." *Id.*

As outlined in Section II.B. *supra*, *Field* held that failure to file notice of sale or an affidavit does not invalidate the sale. 106 Mass. at 313; *see also* Francis T. Talty *et al.*, 5 Methods of Practice § 13.11 (4th ed. 2011) ("The failure of the mortgagee to comply with the statute would compel the plaintiff, if his title was questioned, to resort to extrinsic evidence to show that the power having been properly exercised, the foreclosure was valid.").

In any event, JPMC complied with the requirements of § 15, albeit tardily.  On March 12, 2009, nearly four months after the purported foreclosure sale,[12] JPMC recorded a notice of sale and an affidavit "fully and particularly stating [its] acts" with the registry of deeds.  The affidavit incorrectly reported the time of the sale as 12:00 p.m., but nevertheless provided the information required by § 15.  That the affidavit contains such a mistake does not *per se* render the underlying sale invalid; the affidavit of sale is merely evidence of foreclosure and is not conclusive as to the particulars of the foreclosure process.  Arthur D. Brecher *et al.*, Massachusetts Mortgages, Foreclosures, and Workouts § 3.5.1(b) (MCLE, 5th ed., 1st Supp. 2010).

Consequently, even if the November 20, 2008, foreclosure sale were later to be found invalid, I am satisfied that Hammonds has failed to establish that she is entitled to relief under § 15 or that JPMC failed to comply with that provision.  *See also City of Boston*, 55 N.E.2d at 689.

C. Fraudulent and Negligent Misrepresentation (Count VI)

Under Massachusetts law, "[t]o recover for fraudulent misrepresentation, a plaintiff must allege and prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the

---

[12]A time limit for filing the notice and affidavit under § 15 was eliminated in 1994.  *See* 1994 Mass. Acts ch. 341.

plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [his or her] damage." *Masingill v. EMC Corp.*, 870 N.E.2d 81, 88 (Mass. 2007) (citation and quotation marks omitted). "In order to recover for negligent misrepresentation a plaintiff must prove that the defendant (1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information." *Gossels v. Fleet Nat'l Bank*, 902 N.E.2d 370, 377 (Mass. 2009). A misrepresentation is material if it "was one of the principal grounds, though not necessarily the sole ground, that caused the plaintiff 'to take the particular action that the wrongdoer intended he should take as a result of such representations and that otherwise he would not have taken such action.'" *Nat'l Car Rental Sys., Inc. v. Mills Transfer Co.*, 384 N.E.2d 1263, 1264 (Mass. App. Ct. 1979) (rescript).

JPMC first argues that Count VI, Hammonds's misrepresentation claim, fails to identify with particularity any alleged false statement or misrepresentation and thus does not satisfy the heightened pleading standards required by Fed. R. Civ. P. 9(b). JPMC contends that the Amended Complaint focuses on misrepresentations by Ameriquest at the origination of the

mortgage and describes JPMC's alleged misrepresentations only in vague and broad terms.

Rule 9(b) establishes that allegations of fraud or misrepresentation must be pled with particularity. Similarly, Massachusetts law requires, "[a]t a minimum, a plaintiff alleging fraud must particularize the identity of the person(s) making the representation, the contents of the misrepresentation, and where and when it took place. In addition, the plaintiff should specify the materiality of the misrepresentation, its reliance thereon, and resulting harm." *Equip. & Sys. for Indus., Inc. v. Northmeadows Constr. Co.*, 798 N.E.2d 571, 574 (Mass. App. Ct. 2003) (rescript).

In her Amended Complaint, Hammonds alleges that "material representations made by . . . Co-Defendant JPMC were unfair, and involved and included . . . wrongfully holding a foreclosure sale auction when, in fact, no one was there besides the Plaintiff to bid." (Am. Compl. ¶ 78.) Her allegation otherwise merely parrots the elements of the claims: "JPMC made these false and wrongful material misrepresentations to the Plaintiff with the specific intent that the Plaintiff rely thereon," that "Plaintiff did reasonably rely upon [them] to her detriment," and that she was damaged as a result. (Am. Compl. ¶¶ 79-81.) Reading the complaint generously, the purported misrepresentations made by JPMC were in the notice of foreclosure and affidavit of sale

recorded with the registry of deeds and falsely stated to the effect that JPMC had purchased and sold the property at 12:00 p.m. on November 20, 2008.[13] As a result, Hammonds maintains, she relied upon those statements and lost her home.

Even if these bare pleadings were sufficient, and I am not convinced that they are, Count VI cannot survive JPMC's summary judgment motion because the alleged false statements were neither false nor material.

## 1. Mortgagee's Duty of Care

As the Supreme Judicial Court has stated, "[t]he law governing a mortgagee's responsibility to the mortgagor in the exercise of a power of sale is relatively straightforward. The mortgagee 'must act in good faith and must use reasonable diligence to protect the interests of the mortgagor.'" *Williams*, 630 N.E.2d at 584 (quoting *Seppala & Aho Constr. Co. v. Petersen*, 367 N.E.2d 613, 616 (Mass. 1977)). This duty is "more exacting when [the mortgagee] becomes the buyer of the property," in which

_____

[13]Reading Hammonds's complaint more narrowly to allege only that JPMC falsely stated that it held a foreclosure sale when only plaintiff was present to bid, the misrepresentation claim would fail. Under Massachusetts law, an auctioneer may act as agent of the mortgagee and bid on the mortgagee's behalf. *See In re Grassie*, 293 B.R. 239, 831 n.2 (Bankr. D. Mass. 2003) (citations omitted). JPMC has presented unrebutted evidence that the auctioneer, Kusinitz, was authorized to bid on JPMC's behalf, bidding instructions were provided to Kusinitz, and Kusinitz executed the memorandum of sale listing JPMC's buy-back bid. Hammonds concedes that an auction was "attempted" at 2:30 p.m. JPMC, therefore, did not falsely state that it was present as a bidder at the auction.

case it "will be held to the strictest good faith and the utmost diligence for the protection of the rights of [its] principal." *Id.* The essential duties of the mortgagee in the mortgage sale is "to obtain for the property as large a price as possible." *Id.* (citation omitted). However, that the mortgagee is the sole bidder is not itself and indication of bad faith on the part of the mortgagee in conducting the sale. *Pemstein v. Stimpson*, 630 N.E.2d 608, 611 (Mass. App. Ct. 1994).

Failure to act in good faith or with due diligence invalidates the sale. *DesLauries v. Shea*, 13 N.E.2d 932, 935 (Mass. 1938). "On those occasions when the court held a sale invalid, the bad faith or failure of diligence has been of an active and conspicuous character." *Pemstein*, 630 N.E.2d at 611 (collecting cases). In general, in Massachusetts, "the mortgagee is given much leeway." *Id.* (finding that adherence to the statutory requirements of Chapter 244 of the Massachusetts General Laws is generally considered sufficient to satisfy the mortgagee's fiduciary duty absent "fraud, bad faith, or absence of reasonable diligence in the foreclosure sale process").

In addition to its fiduciary duty to the mortgagor, the mortgagee as seller must comply with both the statutory requirements and the terms of the power of sale contained in the mortgage itself. *See id.; McGreevey v. Charlestown Five Cents Sav. Bank*, 2 N.E.2d 543, 544 (Mass. 1936) ("It is familiar law

that one who sells under a power [of sale] must follow strictly

its terms.  If he fails to do so, there is no valid execution of

the power, and the sale is wholly void . . . whether [he] act[ed]

in good faith or not." (citation omitted)).

## 2. Continuance of Foreclosure Sale

Hammonds argues that neither JPMC nor Kusinitz had the

authority to postpone or continue the foreclosure sale from 12:00

p.m. to 2:30 p.m., and therefore the only properly noticed

foreclosure sale — at 12:00 p.m. — did not take place.  The 2:30

p.m. sale, she maintains, was not properly noticed and thus was

invalid.

Under Massachusetts law, a mortgagee may postpone a

foreclosure auction by public proclamation without renewing the

statutory notice requirements.  *See Fitzgerald v. First Nat'l

Bank of Boston*, 703 N.E.2d 1192, 1194 (Mass. App. Ct. 1999)

(citations omitted) ("It has long been accepted practice in

Massachusetts that, while details of the initial auction must be

provided by written notice to the appropriate parties and

published in a newspaper in accordance with [Mass. Gen. Laws ch.]

244, §§ 11-17B, a postponement of the sale may be announced by

public proclamation to those present at the auction site.");

*Clark v. Simmons*, 23 N.E. 108, 108 (Mass. 1890) (upholding

validity of foreclosure sale when several adjournments were

noticed only by public proclamation on the original scheduled

date and time and at each subsequent adjournment and no notice was given to mortgagor of adjournments). Indeed, in some cases, adjournment is required to "make reasonable efforts to prevent a sacrifice of the property." *Fitzgerald*, 703 N.E.2d at 1194 (citations and quotation marks omitted).

Massachusetts courts have recognized a certain flexibility in the timing of foreclosure sales so long as the statutory notice requirements have been met and the mortgagor and all other interested parties have received sufficient notice. *See, e.g.*, *id.* at 1194–94 ("Apart from the statutory requisites, . . . questions regarding notice of foreclosure proceedings will continue to be viewed according to the criteria set forth in our cases, rather than under any hard and fast rule, in light of the mortgagee's general obligations of good faith, diligence, and fairness in the disposition of the mortgaged property."); *Seppala & Aho Constr. Co.*, 367 N.E.2d at 618 ("The many cases permitting, but not requiring, a mortgagee to adjourn the foreclosure sale show a similar flexibility regarding the timing of foreclosure."). Flexibility in continuance is especially appropriate when the mortgagor herself seeks a delay of the auction. *See Fitzgerald*, 703 N.E.2d at 1194 (stating that adjournment without additional notice is appropriate "particularly when the adjournment is requested by the mortgagor"); *Stevenson v. Dana*, 44 N.E. 128, 128 (Mass. 1896)

(finding additional advertisement unnecessary when "[t]he
adjournments were all made at the [mortgagor's] request and
sufficient notice was given to protect his interests.");
*Tarvezian v. Debral Realty*, No. 921437, 1996 WL 1249891, at *5
(Mass. Super. Ct. Sept. 27, 1996) ("Where a postponement of a
foreclosure sale is due to the request of the mortgagor, it is
'not necessary to advertise the same.'" (quoting *Stevenson*, 44
N.E. at 128)).

The instant case is similar to *Fitzgerald*, in which the
Massachusetts Appeals Court held that no additional notice was
required when a legally and properly noticed sale was postponed
first by agreement of the mortgagor and mortgagee and then
postponed from 11:00 a.m. to 2:30 p.m. on the postponement date,
and both postponements were announced by public proclamation at
the set date and time.  703 N.E.2d at 1194; *see also Carilla v.
Hersey*, 12 N.E.2d 68, 69-70 (Mass. 1937) (finding no error in
notice or conduct of the sale when the auctioneer adjourned the
sale by public proclamation for less than one hour to allow the
highest bidder to obtain cash for the deposit); *Stevenson*, 44
N.E. at 128.  *But see Bertonazzi v. Mechs. Nat'l Bank*, 390 N.E.2d
260, 260 (Mass. App. Ct. 1979) (rescript) (holding that where
there was no public declaration of adjournment on the date to
which the sale had been adjourned, public proclamation of a
further adjournment on the following day was invalid).

Hammonds concedes that the statutory notice requirements for the 12:00 p.m. sale on November 20, 2008, were satisfied. Kusinitz publicly told those bidders present at 12:00 p.m. that the auction was postponed and would begin at 2:30 p.m., and Hammonds was present at both 12:00 p.m. and 2:30 p.m. Thus, even if Hammonds did not herself ask for a continuance,[14] her interests were adequately protected and sufficient notice was given to those interested. *See Stevenson*, 44 N.E. at 128.

### 3. Execution of the Memorandum of Sale

Hammonds contends that no sale occurred because no JPMC representative was present to bid, Kusinitz did not accept a bid from JPMC, and JPMC — as purchaser — never signed the memorandum of sale as required by the terms of sale listed in the public notice.[15] JPMC concedes that JPMC never signed the memorandum of sale,[16] but maintains that the lack of a signature does not

---

[14]In her deposition, Hammonds states that she did not ask Kusinitz to delay the auction on November 20, 2008. However, in her opposition to JPMC's statement of material facts, she did not contest JPMC's statement that she had requested the delay.

[15]Hammonds also claims that no valid sale took place because JPMC did not tender the deposit required by the terms of sale listed in the public notice. However, the public notice explicitly stated that "the mortgage holder and its designee(s) are exempt from this [deposit] requirement."

[16]Kusinitz states: "It is my usual practice to complete the foreclosure paperwork immediately after the auction, and it is my recollection that I did so in this case. I filled out the relevant information on the Memorandum of Sale and Affidavit of sale, and in keeping with my usual practice, I left the buyer and

invalidate the sale.  Alternatively, JPMC argues that a signed
memorandum of sale is not necessary to vest title.

### a. Auctioneer as Agent

Hammonds suggests, without providing authority, that
Kusinitz had no authority to bid on JPMC's behalf.  Under
Massachusetts law, however, the auctioneer may act as an agent
for both the seller and purchaser at a foreclosure auction.  *In
re Grassie*, 293 B.R. 829, 831 n.2 (Bankr. D. Mass. 2003) (citing
*Weiner v. Slovin*, 169 N.E. 64, 65 (Mass. 1930) and *Rix v. Dooley*,
77 N.E.2d 233, 235 (Mass. 1948)); *see also Weiner*, 169 N.E. at 65
("An auctioneer is the agent of both parties and has authority to
make a memorandum sufficient to satisfy the statute of frauds
binding both seller and purchaser." (citation omitted)).
Additionally, the auctioneer may bid on behalf of a mortgagee not
present at the sale.  *Flynn v. Curtis & Pope Lumber Co.*, 139 N.E.
533, 536 (Mass. 1923) ("The fact that the defendant company
through its agent was the only bidder and was not personally
present is not sufficient to set aside the sale. . . .  In the
absence of bad faith there is no legal objection to the
auctioneer making a bid for the mortgagee or purchaser."
(citations omitted)).

JPMC faxed bidding instructions to Kusinitz on the morning

---

seller lines blank.  I then mailed the foreclosure documents to
Bay State."

26

of the foreclosure sale.  The instructions permitted Kusinitz to bid, on JPMC's behalf, up to $730,911.13 if other bids were forthcoming or $734,672.73 (the full amount of the outstanding mortgage) as a buyback if no other bidders came forward. Hammonds questions the authenticity of the bidding instructions fax, but offers no evidence supporting this accusation.  Hammonds also alleges that Kusinitz did not accept the JPMC bid, but provides no support for this assertion, which is inconsistent with her admission that Kusinitz "attempted" to hold a foreclosure sale at 2:30 p.m.  Such "conclusory allegations, improbable inferences, [and] rank speculation" cannot create a genuine issue of material fact in light of the evidence available in the record indicating the contrary.  *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010).

Kusinitz thus had the authority to bid and accept a bid on behalf of JPMC.  The question remaining is whether Kusinitz, as auctioneer and agent, otherwise properly conducted the foreclosure sale.

### b. Memorandum of Sale

A foreclosure sale is complete when the memorandum of sale is executed, and the mortgagor's right to redeem is terminated. *Outpost Café, Inc.*, 322 N.E. at 185; *see also In re Dow*, 250 B.R. 6, 8 (Bankr. D. Mass. 2000) (finding that a mortgagor retained the right of redemption after auctioneer accepted the highest bid

only until the memorandum of sale was signed).  A memorandum of sale is properly executed "when the parties have complied with the statute of frauds."  *In re Grassie*, 293 B.R. at 81 (citation omitted).  When an auctioneer acts as agent of the purchaser and seller, "[b]oth parties are bound under the Statute of Frauds to the memorandum of sale that an auctioneer executes on their behalf."  *Id.* at 831 n.2.  However, "[f]ailure of the auctioneer to make any memorandum of the sale as required by the Statute of Frauds results in no enforceable sale."  *Id.; see also Weiner*, 169 N.E. at 65 ("The failure of the auctioneer to make any memorandum of the purchase and sale as required by the statute of frauds makes it plain that there was no enforceable sale.").

There is no dispute that Kusinitz signed the memorandum of sale, recording the sale price as the buyback price of $734,672.73.  But the seller and purchaser lines were left blank. Indeed, nowhere on the memorandum of sale does Kusinitz indicate that JPMC was the purchaser.

Thus, the issue is whether Kusinitz's signature as auctioneer is sufficient to satisfy the statute of frauds, which requires that "the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized."  Mass. Gen. Laws ch. 259, § 1.  Research has discovered no case that has

explicitly discussed whether the auctioneer must sign both as auctioneer and (again) as agent of the purchaser and/or seller, or if the auctioneer's signature on the memorandum of sale, without more, executes the agreement. Courts have repeatedly held that a memorandum of sale signed only by the auctioneer satisfies the statute of frauds and lawfully executes a memorandum of sale on behalf of his principal(s). *See, e.g.*, *Rix*, 77 N.E.2d at 235 ("Both parties are bound under the Statute of Frauds . . . by the memorandum made at the time and place of sale by the auctioneer, who at that time was acting as the agent for both sellers and purchasers."); *Pilok v. Bednarski*, 119 N.E. 360, 360 (Mass. 1918) (finding foreclosure sale valid where mortgagee purchased property via auctioneer, the auctioneer signed the memorandum of sale, and deposit was tendered); *see also In re Grassie*, 293 B.R. at 832 ("Without the Creditor's signature *or the signature of the auctioneer as an agent* for the Creditor, the Purchaser cannot compel the Creditor to transfer the Property." (emphasis added)); *Weiner*, 169 N.E. at 65. These cases, however, do not address exactly *how* or *where* the auctioneer did or should sign the memorandum of sale.

Furthermore, in *Guempel v. Great Am. Ins. Co.*, 420 N.E.2d 353, 357 (Mass. App. Ct. 1981), the Massachusetts Appeals Court through retired Supreme Judicial Court Justice Cutter upheld a foreclosure sale when the memorandum of sale had

not been signed but the seller and highest bidder had already conveyed title to itself under the terms of the power of sale.

Together, these cases suggest at a minimum that the signature of the auctioneer alone is sufficient to satisfy the statute of frauds here. Kusinitz signed the memorandum of sale, which contained the terms by which the purchaser and seller — his principals — are bound. As in *Guempel*, JPMC conveyed title to itself, executed a notice of sale and foreclosure deed memorializing the terms of sale contained in the memorandum of sale and confirming receipt of the purchase price, and recorded the documents as required by Mass. Gen. Laws ch. 244, § 15.

The memorandum of sale, and, consequently, the sale itself, were valid, and Hammonds right of redemption and interest in the property were thereby terminated as a matter of law. *Williams*, 630 N.E.2d at 585.

### 4. Incorrect Time Reported in Affidavit of Sale

Inaccuracies by JPMC in the affidavit of sale and notice of foreclosure filed with the registry of deeds on March 12, 2009, are not material. The recorded documents function as evidence of the sale only, *see* Mass. Gen. Laws ch. 244, § 15, and, in any event, Hammonds no longer had any enforceable interest in the property following the execution of the memorandum of sale, *see id.; Field*, 106 Mass. at 312–13. The remedy for an error in an affidavit of sale is not invalidation of that sale, but rather a

petition to file an amended affidavit curing the defect. *See* Talty *et al.*, 5 Methods of Practice § 13.11 ("[T]he land court, on petition and after such notice as it may order may, if it deems proper, authorize the recording of an affidavit amending, correcting or in substitution for [the original affidavit]."). That remedy provides no benefit to Hammonds.

D. Relief from Judgment (Count VII)

Hammonds lastly seeks relief from the "Final Judgment of Foreclosure" on the grounds that JPMC "acquired title to the property through unfair conduct." (Am. Compl. ¶ 87.) Hammonds does not, however, identify the judgment she seeks to be set aside. The only judgment in the record is the Land Court's judgment of January 24, 2007, authorizing JPMC to make entry and sell the property under the power of sale contained in the mortgage. Hammonds has offered no evidence or argument that this judgment was improper. Moreover, the proper place and time to challenge that judgment was on direct appeal in that court.

In any event, Hammonds's equitable claim rests upon her legal claims, all of which I have already determined to be without merit. As discussed in Section III.C. of this Memorandum and Order, Hammonds has failed to establish a genuine issue of material fact regarding JPMC's conduct during the foreclosure sale. JPMC satisfied its duty to Hammonds as mortgagor, and Hammonds is not entitled to the equitable relief that she seeks.

*See DesLauries*, 13 N.E.2d at 935 ("Harm resulting to the plaintiff from the exercise by the bank, by legal means, of its legal right to foreclose would not create a cause of action. Such a foreclosure by the bank would not be 'an intentional invasion of a legally protected interest without legal justification,' which would create liability." (citations omitted)).

## IV. CONCLUSION

For the reasons set forth more fully above, I GRANT the defendant's motion for summary judgment (Doc. No. 43).


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE